UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL SPRIGGENS                                          CIVIL ACTION

VERSUS                                                    NO. 11-2266-SS

DR. DENNIS LARAVIA, ET AL.

**ORDER AND REASONS**

Plaintiff, Daniel Spriggens, a state inmate, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983 against Dr. Dennis LaRavia. In this lawsuit, plaintiff alleged that he was denied adequate medical care for Hepatitis C at the B.B. "Sixty" Rayburn Correctional Center.

Dr. LaRavia filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Plaintiff was ordered to file a memorandum in opposition to that motion,[2] but he filed no such opposition. Instead, he filed an amended the complaint, adding additional allegations against Dr. Laravia and asserting claims against two new defendants, Nurse Bessie Carter and Warden Robert Tanner.[3]

---

[1] Rec. Doc. 24.

[2] Rec. Doc. 25.

[3] Rec. Doc. 28.

## I. Motion for Summary Judgment

The Court will first address Dr. LaRavia's pending motion for summary judgment. In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion

for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In the original complaint, plaintiff alleged that had not received adequate treatment for Hepatitis C while he was incarcerated at the B.B. "Sixty" Rayburn Correctional Center ("RCC"). He stated: "I have seen the nurses numerous times and doctor a few times. I also talked with the (HCV RNA) speicalist here. I haven't receive any medication for (HCV) only blood tooken twice. Everytime results was worser."[4]

As a preliminary matter, the Court notes that plaintiff is no longer incarcerated at RCC. After this lawsuit was filed, he was transferred to the Elayn Hunt Correctional Center ("EHCC").[5] Therefore, as Dr. LaRavia correctly noted in his motion, plaintiff's requests for injunctive relief must be denied as moot. The United States Fifth Circuit has clearly and repeatedly held that a transfer renders moot any claims for injunctive relief with respect to an inmate's prior facility. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); see also Kidd v. Livingston, No. 11-40492, 2012 WL 614372, at *2 (5th Cir. Feb. 28, 2012); Stern v. Hinds County, Mississippi, 436 Fed. App'x 381, 382 (5th Cir. 2011); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Davis v. Wall, No. 94-41002, 1995 WL 136204, at *2 n.3 (5th Cir. Mar. 9, 1995).

Plaintiff's transfer did not, of course, render moot his claim against Dr. LaRavia for monetary damages. Nevertheless, for the following reasons, it is evident that Dr. LaRavia is entitled to summary judgment on that claim.

---

[4] Rec. Doc. 1, p. 6.

[5] Rec. Doc. 19.

In reviewing plaintiff's claim that he was denied adequate medical care for Hepatitis C, it is important to first remember that a prisoner's constitutional right to medical care is extremely limited. For example, if an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment is unsuccessful or because pain persists despite the treatment. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Further, the federal constitution certainly does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349; McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

On the contrary, an inmate's federal constitutional right to medical care is violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See

Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In his motion for summary judgment, Dr. LaRavia argues that plaintiff received constitutionally adequate medical care for Hepatitis C while at RCC. In support of that contention, Dr. LaRavia submitted the affidavit of Steffi Scritchfield. In that affidavit, Scritchfield stated:

1. I am employed by the Louisiana Department of Public Safety and Corrections at the B.B. "Sixty" Rayburn Correctional Center (RCC) in Angie, Louisiana, as the RN Program Coordinator of the LSU Hepatitis Continuity Clinic.

2. As the Program Coordinator, I coordinate with Elizabeth Britton, nurse practitioner at the LSU Hepatitis Clinic that operates out of EHCC.

3. The Hepatitis Clinic provides specialized treatment for offenders with Hepatitis.

4. Among my duties, I ensure that everything needed for an offender gets forwarded to LSU Hepatitis Clinic quickly and correctly, such as paperwork and lab work.

5. I also coordinate with the Medical Director of RCC to monitor the condition of the offenders housed at RCC who have HCV or other infectious diseases such as HIV.

6. Generally, lab work is conducted annually of offenders with HCV. However, the Medical Director may order additional lab work in more frequent intervals or at any time.

7. I work closely with the Medical Director of RCC to ensure that offenders with HCV receive all of the lab work necessary to monitor their conditions.

8. I personally monitored the condition of offender Daniel Spriggens (DOC No. 381765) as part of my duties as RN Program Coordinator.

9. I reviewed the medical record of offender Daniel Spriggens.

10. That based on my review of offender Spriggens's medical record and my personal recollections of the treatment of offender Spriggens there is no doubt in my mind that offender Spriggens was properly monitored and treated for Hepatitis C Virus while incarcerated at Rayburn Correctional Center.

11. Offender Spriggens was received at RCC on January 3, 2011, and saw the Medical Director, Dr. Dennis Laravia.

12. Dr. Laravia ordered lab work and referred offender Spriggens to the Hepatitis Clinic.

13. Labs to determine the health of offender's liver were conducted April 6, 2011.

14. Offender Spriggens was seen in the RCC Hepatitis Clinic on April 26, 2011.

15. Offender Spriggens requested Treatment at Elayn Hunt Correctional Center.

16. Initial paperwork was sent to EHCC on May 25, 2011.

17. Because he requested treatment at EHCC, a confirmation lab test was needed. Further, EHCC recommended further testing.

18. Additionally, because offender Spriggens had a mental health diagnosis, paper work had to be completed by the mental health department.

19. The paperwork was forwarded to mental health August 30, 2011 and received back on October 6, 2011. It was then forwarded to EHCC.

20. Additional lab testing was done on July 14, 2011.

21. Offender Spriggens was seen again in the RCC Hepatitis Clinic August 15, 2011.

22. Offender Spriggens was seen by Ms. Elizabeth Britton, N.P. in the Telemed Clinic on September 14, 2011. She requested further testing.

23. That testing was performed October 12, 2011 and after review by Dr. Dennis LaRavia, it was forwarded to EHCC on November 17, 2011.

24. Reminders about offender Spriggens were sent to Ms. Britton on December 12, 2011, and January 3, 2012.

25. In addition to the normal delays associated with getting into the LSU Hepatitis Clinic at EHCC, part of the hold up on offender Spriggens's transfer was his out-of-control blood pressure.

....

29. The signed transfer orders for offender Spriggens was forwarded to the LSU Hepatitis Clinic at EHCC on January 4, 2012. He was transferred to EHCC shortly thereafter.[6]

Dr. LaRavia also submitted with his motion copies of plaintiff's medical records documenting the diagnostic tests performed and actions taken to have plaintiff transferred to the Hepatitis Clinic at EHCC.[7]

---

[6] Rec. Doc. 24-3.

[7] Rec. Doc. 24-4 (Manual Attachment).

As Dr. LaRavia argues, plaintiff's allegations of deliberate indifference are clearly rebutted by his medical records. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those records show that Dr. LaRavia did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. Far from ignoring plaintiff's condition or denying him care, Dr. LaRavia even went above and beyond what was required by arranging for plaintiff to be transferred to a different facility with a specialized Hepatitis C Clinic.

The fact that plaintiff apparently believes that Dr. LaRavia could have done more is of no moment. As previously explained, a prisoner is guaranteed only adequate, *not* optimal, medical care. See Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."). Further, absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Id. at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No.

08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is simply no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. It is evident here that there was no deliberate indifference with respect to plaintiff's treatment for Hepatitis C. Because no genuine issue of material fact remains in dispute with respect to that issue, Dr. LaRavia is entitled to judgment as a matter of law.

## II. Plaintiff's Amended Complaint

As noted, after the motion for summary judgment was filed, plaintiff amended his complaint to add claims against two new defendants, Nurse Bessie Carter and Warden Robert Tanner. For the following reasons, the claims against those new defendants must likewise be denied.[8]

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

---

[8] Although plaintiff also added new allegations against Dr. LaRavia in the amended complaint, the claim against him is the same, i.e. that Dr. LaRavia was deliberately indifferent to plaintiff's serious medical needs resulting from his Hepatitis C. That claim has already been addressed with respect to the motion for summary judgment and must be denied for the reasons previously explained.

9

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

The claims against Carter and Tanner, even broadly construed,[9] are frivolous and/or fail to state a claim on which relief may be granted.

Plaintiff's claims against those two defendants appear in part to be related to their respective roles in processing an administrative grievance plaintiff filed against Nurse Josh Goff. In that grievance, which is attached to the amended federal complaint,[10] plaintiff alleged that (1) he had been offered a restrictive duty status by Dr. LaRavia but originally refused it; (2) Nurse Goff assured him that he could later get the status simply by requesting it; and (3) Goff later refused to place him on the restrictive duty status. Plaintiff also stated in the grievance that he wanted to be transferred to a facility with a specialized department for the treatment of Hepatitis C. Carter prepared a response to that grievance, stating:

> Your complaint has been reviewed and investigated. The statement of Nurse Josh Goff, LPN, has been reviewed as well as your medical record.

---

[9] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[10] Rec. Doc. 28, pp. 2-3.

> There is no documentation on your medical record that Dr. Dennis LaRavia, Medical Director, gave you a restrictive duty status for which you signed a refusal form for. You were seen as a new intake by the doctor on January 03, 2011, at which time he issued you a Regular Duty status. You attended sick call on February 23, 2011, and when your medical record was reviewed by the doctor on February 24, 2011, he wrote orders for you to avoid salt; increase your walking and water intake; blood pressure call out once a week for four weeks; and added Vasotec 20 mg once a day for your blood pressure. You attended sick call again on March 26, 2011, and were referred to see the doctor concerning your duty status. You attended sick call again on March 30, 2011, with complaints of something in your ear and you were referred to see the doctor the next morning. You were seen and evaluated by the doctor on March 31, 2011, at which time he documented that you wanted your duty status back. There were no changes made to your duty status at that time. You were scheduled for doctor call on April 20, 2011, and the doctor reviewed the medical records for the call out for that day and documented to continue Regular Duty and cancelled your call out. You attended sick call again with complaints that you felt your medications needed to be adjusted and were again referred to see the doctor. You have a scheduled appointment to see him on June 15, 2011. Nurse Goff denies telling you anything about your duty status. The doctor is the only one who can order duty statuses. Your medical condition for the Hepatitis C is being closely monitored by Dr. LaRavia, and until he feels that you need to be recommended for referral to Elayn Hunt Correctional Center for treatment, you will continue to be monitored here. Your medical needs have been and continue to be met in a timely and appropriate manner.
>
> No further relief is warranted for this complaint. Your request for remedy is denied.[11]

Warden Tanner then signed off on Carter's response,[12] and the grievance was likewise denied on appeal.[13]

To the extent that plaintiff is seeking to hold Carter and Tanner liable for their roles in denying the foregoing grievance, any such claim must be rejected because an inmate simply has no

---

[11] Rec. Doc. 28, p. 4.

[12] Rec. Doc. 28, p. 4.

[13] Rec. Doc. 28, p. 6.

constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

Further, to the extent that plaintiff is attempting to hold Tanner vicariously liable based on his supervisory capacity, that claim must likewise fail. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008).

Lastly, to the extent that plaintiff is attempting to also hold Carter liable for the purported inadequacy of his medical care, that claim fares no better. As previously explained, plaintiff's medical records prove that his medical care met the minimum standards imposed by the constitution. In light of that fact, there obviously is no basis for holding Carter liable for her limited role in his medical care.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment, Rec. Doc. 24, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE** for the reasons set forth herein.

New Orleans, Louisiana, this fourth day of April, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**